IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KAREN DURDEN AND
MICHAEL DURDEN,

    Plaintiffs,
v.                                        Case No.: 5:20-cv-00106-AW-MJF

AIG PROPERTY CASUALTY COMPANY,

    Defendant.
_____/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Karen and Michael Durden, pursuant to Rule 15, Federal Rules of Civil Procedure, hereby bring their amended complaint against AIG Property Casualty Company, and in support thereof state as follows:

**GENERAL ALLEGATIONS
AND JURISDICTIONAL STATEMENT**

1. This is an action for monetary damages and declaratory relief over which this Court has jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, and pursuant to 22 U.S.C. § 2201 as a claim for declaratory judgment.

2. Plaintiffs Karen and Michael Durden ("Durdens") reside and own property in Bay County, Florida.

3. AIG Property Casualty Company ("AIG") is a foreign for-profit insurance company.

4. Venue is proper in the U.S. District Court for the Northern District of Florida, because AIG is actively doing business here, and breached a contract of insurance by failing to pay a covered loss to the Durdens in Bay County, Florida.

5. The Durdens were, at all times relevant hereto, the owners of a residential property at 3730 Preserve Bay Blvd., Panama City, FL 32408 (the "Residence"). The Residence lies on the St. Andrew Bay in the Preserve subdivision of Panama City Beach.

## THE POLICY

6. On or about April 28, 2018, AIG issued policy number PCG0003498819 (the "Policy"), which insured the Residence and its contents through April 28, 2019. A true and correct copy of the Policy is attached hereto as Exhibit "A."

7. The coverage limit for the main dwelling on the Residence was $11,193,000.00. This amount was derived from a Risk Management Report prepared by and on behalf of AIG on June 9, 2017. The Risk Management Report, which is attached hereto as Exhibit "B," specifically noted the unique nature of the Residence and its myriad custom features.

8. The Policy included a hurricane deductible of $223,860.00, representing 2% of the coverage limit for the dwelling on the Residence.

9. In consideration of AIG's obligations under the Policy, the Durdens paid $49,620.00 in insurance premium.

10. The Policy obligated AIG to pay a property damage loss in accordance with its "Extended Rebuilding Cost Coverage," which provided in relevant part:

> We will pay extended rebuilding cost when shown on the declarations page of this Policy. Extended rebuilding cost coverage means that for a covered loss we will pay the reconstruction cost of your house or other permanent structures, for each occurrence.

11. The Policy also provided, with regard to loss payment:

> We will adjust all losses with you. We will pay you unless some other person is named in the Policy or is legally entitled to receive payment. Loss will be payable upon the earlier of the following:
> 1. Twenty days after we receive your proof of loss and reach written agreement with you; or
> 2. Sixty days after we receive your proof of loss and:
>    a. There is an entry of a final judgment; or
>    b. There is a filing of an appraisal award or a mediation settlement with us; or
> 3. If payment is not paid or denied within 90 days after we receive notice of claim. However, this provision does not apply if factors beyond our control reasonably prevent such payment.

## THE COVERED LOSS

12. On or about October 10, 2018, Hurricane Michael slammed into Bay County, significantly damaging the Residence.

13. On or about October 15, 2018, the Durdens filed a claim against the Policy through their insurance agent. At that point, AIG was obligated to pay or

deny the claim within 90 days. Instead, it did neither.

14. October 22, 2018, the first representative from AIG visited the Residence.

15. On October 25, 2018, an independent adjuster inspected the Residence on behalf of AIG.

16. On October 29, 2018, an architect inspected the Residence on behalf of AIG.

17. On October 30, 2018, yet another adjuster inspected the Residence to evaluate the contents claim against the Policy.

18. On November 6, 2018, a professional engineer inspected the Residence on behalf of AIG.

19. On December 29, 2018, a construction professional prepared and submitted a scope of work for the claim to AIG, totaling over $7 million.

20. On January 8, 2018, the architect referenced in paragraph 16, above, made AIG's sixth inspection of the Residence in less than three months.

21. On February 7, 2019, AIG performed yet another inspection with a representative of Crestron to evaluate damage to lighting at the Residence.

22. On February 15, 2019, AIG submitted its own repair estimate to the Durdens, totaling only $1,618,365.13. In at least three separate disbursements, in November of 2018, February of 2019, and April of 2019, AIG paid the Durdens in

part on their claim under Coverage A of the Policy for damage to the structure.

23.   On February 28, 2019, an engineer inspected the Residence yet again, on behalf of AIG, and performed only a visual inspection of windows that had been damaged in the storm.

24.   On July 17, 2019, the Durdens submitted their revised damages estimate to AIG, totaling approximately $5,321,000.00.

25.   On August 28, 2019, a month-and-a-half after receiving the Durdens' estimate, AIG rejected the estimate because it disagreed with the methodology of the Durdens' experts. AIG then demanded the right to come onto the property for the ninth time to perform additional testing in an attempt to refute the Durdens' estimate. That testing finally took place two-and-a-half months later, in November of 2019.

26.   In the interim, on October 8, 2019, the Durdens submitted their Civil Remedy Notice to the Florida Department of Financial Services, outlining the bad faith misconduct of AIG in the handling of their claim. AIG rejected the allegation of bad faith on November 22, 2019.

27.   The following day, in an effort to bring the endless adjusting of this claim to a conclusion, the Durdens requested appraisal pursuant to the terms of the Policy. AIG responded on November 4, 2019, refusing appraisal and demanding additional window testing.

27. Remarkably, on February 7, 2020, nearly sixteen (16) months after Hurricane Michael, and after already paying nearly $2 million on this claim, AIG demanded that the Durdens submit a sworn proof of loss, produce documents substantiating their claim, and appear for an examination under oath unilaterally tentatively set by AIG for May 8, 2020. AIG's right to demand any such relief has been waived as a matter of Florida law, however, and the Durdens responded by filing this suit.

28. Despite the fact that AIG waived its right to a sworn proof of loss, additional documents, and an EUO, by virtue of the fact that it accepted liability for the Durden's claim and paid it in part months before AIG's February 7th demand, the Durdens submitted a sworn proof of loss on April 22, 2020, agreed to produce additional documents, and agreed to an EUO in accordance with the timeline proposed by AIG.

29. All conditions precedent to the bringing of this lawsuit have been satisfied or waived.

30. The Durdens have retained the undersigned law firm to represent them in this action, and are entitled to the award of reasonable attorney's fees and costs from AIG pursuant to section 627.428, Florida Statutes.

**COUNT ONE:**
**CLAIM FOR DAMAGES FOR BREACH OF CONTRACT**

31. The Durdens restate and incorporate those allegations in paragraphs 1

through 30 as if originally set forth herein.

32. Through its actions, AIG breached its obligation under the Policy to evaluate and pay the Durdens' claim in a reasonable time, when AIG had ample opportunity to do so.

33. As a direct and proximate result of AIG's breach of contract, the Durdens suffered damages including the amount of the claim that should have been paid, the cost of experts and consultants to evaluate their claim when AIG failed to do so, attorney's fees and costs, and prejudgment interest on their expenditures related to this dispute.

WHEREFORE, the Durdens respectfully requests this Court enter judgment in their favor, and against AIG, and award of compensatory damages, prejudgment interest, reasonable attorney's fees, costs of suit, and such other relief as this court deems proper.

## COUNT TWO:
## DECLARATORY JUDGMENT

34. The Durdens restate and incorporate those allegations in paragraphs 1 through 30 as if originally set forth herein.

35. This is an action for declaratory relief brought pursuant to 22 U.S.C. §2201 and F.R.C.P. 57.

36. There exists a present controversy with regard to the parties' rights

and obligations under the Policy. Specifically, the Durdens contend that AIG was late in making partial payment on the claim, and failed to pay the Durden's claim in full. AIG contends that it has completely fulfilled its obligations under the Policy, and is excused from further performance by virtue of the Durdens filing suit before submitting a sworn proof of loss and other information demanded by AIG. The Durdens contend that these Policy provisions were waived by AIG accepting liability for the claim and paying it long before demanding a sworn proof of loss or an EUO, and even if they were not waived AIG was not prejudiced by submittal of the sworn proof of loss outside the deadline demanding by AIG.

37. Pursuant to 22 U.S.C. § 2201, "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

WHEREFORE, the Durdens respectfully request that this Court declare the rights and obligations of the parties under the Policy, and that:

a. The Durdens are entitled to payment in full of their claim under the Policy;
b. AIG failed to comply with the Policy's mandate that it pay the claim within 90 days;
c. AIG waived its right to a sworn proof of loss, additional documents, and an examination under oath or, in the alternative, was not prejudiced by

any delay in compliance by the Durdens;

d. The Durdens are entitled to their reasonable attorneys' fees and costs incurred in bringing this action.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, the Durdens demand a trial by jury of any issue triable of right by a jury.

## CERTIFICATE OF COMPLIANCE

This pleading complies with Local Rule 5.1(c) regarding formatting of the document.

*~Certificate of Service to follow on next page~*

## **CERTIFICATE OF SERVICE**

I certify that on April 23, 2020, I electronically filed the foregoing document with the Clerk of Court via CM/ECF. I also certify that the foregoing document is being served to all counsel of record.

This 23rd day of April, 2020

                              DUNLAP & SHIPMAN, P.A.

                              */s/Michael P. Dickey*

                              _____
                              Michael P. Dickey
                              Florida Bar #115606
                              2063 S. County Hwy 395
                              Santa Rosa Beach, FL   32459
                              (850) 231-3315
                              Primary: mdickey@dunlapshipman.com
                              Secondary:   amberley@dunlapshipman.com
                              ATTORNEY FOR PLAINTIFFS